**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

**WILLIAM MONTANO and
DORIS LUCERO**,

           Plaintiffs,

v.                                                                          No. CIV 06-0308 BB/ACT

**CHRISTMAS BY KREBS
CORPORATION**,

           Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Christmas By Krebs Corporation's ("Defendant") May 14, 2007 motion for summary judgment against Plaintiff William Montano ("Montano") (Doc. No. 47) and Defendant's May 14, 2007 motion for summary judgment against Plaintiff Doris Lucero ("Lucero") (Doc. No. 49). Having reviewed the submissions of the parties and the relevant law, the Court finds that the motions will be GRANTED.

### Standard for Reviewing a Motion for Summary Judgment

Summary judgment is not "a disfavored procedural shortcut but rather [it is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). It is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56©).  In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving  party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999).  However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

An issue of fact is "material" if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*.  Further, a jury question does not exist because of the presence of a mere "scintilla of evidence"; rather, there must be a conflict in substantial evidence to create a jury question. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006).

## Undisputed Factual Background

Defendant is a manufacturer of holiday ornaments located in Roswell, New Mexico. *See* Pls.' Am. Compl., ¶¶ 4, 8, dated Nov. 7, 2006 (Doc. No. 15).  Between fiscal years 2002 and 2004, Defendant experienced a 52.4% decreases in sales (from $26,640,000 to $12,680,000), apparently due to increased international competition.  *See* Def.'s Montano S.J. Mot., Ex. A, dated May 14, 2007 (Doc. 48) ("Def.'s Statement of Income"); Pl.'s Am. Compl., ¶ 13.  Correspondingly, Defendant incurred a $1,440,000 net income loss during this same time period. *See* Def.'s Statement of Income.  Subsequent to this loss, Defendant performed a reduction-in-force ("RIF") beginning October 2004 and continuing through January 2005.  *See* Pl.'s Am. Compl., ¶ 13.  Plaintiffs Montano and Lucero were both terminated during the RIF.  *See* Def.'s

Montano S.J. Mot., Ex. B ("Montano's Discrimination Charge"); Def.'s Lucero S.J. Mot., Ex. B, dated May 14, 2007 (Doc. 50) ("Lucero's Discrimination Charge").

### Plaintiff William Montano

Defendant terminated Plaintiff Montano's employment on November 16, 2004.  *See* Montano's Discrimination Charge.  This termination occurred in the course of Defendant's RIF.  *Id*.  Montano was fifty-seven years old when he was terminated, and had been employed by Defendant for thirty-one years.  *See* Pls.' Am. Compl., ¶¶ 17, 24.

A little more than a year after he was terminated, on March 24, 2006, Plaintiff Montano applied to the Social Security Administration ("SSA") for Social Security Disability Insurance ("SSDI").  In his application to the SSA, Montano represented that he "became unable to work because of [his] disabling condition on November 13, 2004," (three days before he was terminated) and that he was still disabled as of the date of his application.[1]  *See* Def.'s Supp. Montano S.J. Mem., Ex. A, dated August 6, 2007 (Doc. No. 98) ("Montano's SSDI App.").  Montano's representations to the SSA were made under oath.  *See id.* at p. 3.  Further, Montano was required to review the SSDI application to ensure the SSA recorded his application information correctly and contact the SSA if he disagreed with any of the information recorded on the application.  The SSA subsequently informed Montano that his application for SSDI had been approved and he was entitled to monthly disability benefits beginning June 2006.  *See* Def.'s Supp. Montano S.J. Mem., Ex. D ("Montano's Social Security Notice"), Ex. E

---

[1]  In a Function Report submitted to the SSA, Montano further represented that he "[couldn't] spend long periods of time on [his] feet"; his illnesses, injuries, or conditions affected his sleep; his "[social] activities [had] become minimal"; and his illness, injuries, or conditions affected lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing of tasks.  *See* Def.'s Supp. Montano S.J. Mem., Ex. C, dated August 6, 2007 (Doc. No. 98) ("Montano's Function Report").

("Montano's Notice of Award").  Montano is still receiving these benefits.  *See* Def.'s Supp.

Montano S.J. Mem., Ex. F, pp. 97:15-17, 100: 9-13 ("Montano Depo").

### Plaintiff Doris Lucero

Defendant terminated Plaintiff Lucero's employment on December 13, 2004.  *See* Pl.'s

Am. Compl., ¶ 27.  This termination also occurred in the course of Defendant's RIF.  *Id.*  Lucero

was sixty-four years old when she was terminated, and had been employed by Defendant for

twenty-four years.  *See id.* at ¶¶ 26, 34.

A little more than one year after she was terminated, on January 21, 2005, Plaintiff

Lucero applied to the SSA for disability benefits.  In her application to the SSA, Lucero

represented that she "became unable to work because of [her] disabling condition on October 12,

2004," (approximately two months before she was terminated) and that she was still disabled as

of the date of his application.[23]  *See* Def.'s Supp. Lucero S.J. Mem., Ex. A, dated August 6, 2007

(Doc. No. 97) ("Lucero's SSDI App.").  Lucero's representations to the SSA were made under

oath.  *See id.* at p. 3.  Further, Lucero was required to review the SSDI application to ensure the

SSA recorded her application information correctly and contact the SSA if she disagreed with

---

[2]  Lucero further explained to the SSA that she stopped working on October 11, 2004; "went into surgery on October 12, 2004"; and "was laid off on 12--04."  *See* Pl. Lucero's Resp. to Def.'s S.J. Mot., Ex. 1 to Ex. F, dated May 31, 2007 (Doc. No. 60) ("Lucero's Disability Report").

[3]  In a Function Report submitted to the SSA, Lucero further represented that "[i]t takes [her] a few hours to be [able] to move due to the pain in [her] lower back and legs and knees"; her "daily household chores are very limited"; she could no longer "walk, stand and sit for long periods of time"; "[she] [could] not get a full nights [sic] rest due to pain on [sic] legs and knees"; "[she] [could] not prepare food for family gatherings anymore"; she was "unable to bend to [sic] much so [she] gets help with laundry"; and she could not go out alone because "[s]ometimes [she] loose [sic] balance and [her] knees lock."  Def.'s Supp. Lucero S.J. Mem., Ex. C, dated August 6, 2007 (Doc. No. 97) ("Lucero's Function Report").

any of the information recorded on the application.  The SSA subsequently informed Lucero that her application for SSDI had been approved and she was entitled to monthly disability benefits beginning April 2005.  *See* Def.'s Supp. Lucero S.J. Mem., Ex. D ("Lucero's Notice of Award"). Lucero is still receiving these benefits.  *See* Def.'s Supp. Lucero S.J. Mem., Ex. E, p. 118:10-16 ("Lucero Depo").

## <u>Discussion</u>

Plaintiffs Montano and Lucero initiated this lawsuit on April 17, 2006.  In their Amended Complaint, Plaintiffs assert three Age Discrimination in Employment Act ("ADEA") counts styled as "discrimination," "intentional discrimination (reduction in force)," and "disparate impact."  (Plaintiffs subsequently dismissed their disparate impact claim.)  Plaintiffs also assert a state law wrongful discharge count.

Defendant claims that it is entitled to summary judgment on the ADEA claims because Plaintiffs Montano and Lucero are judicially estopped from establishing a *prima facie* case of age discrimination under the ADEA pursuant to the *McDonnell Douglas* burden shifting method. Specifically, Defendant contends that Plaintiffs' respective statements to the SSA that they were disabled prior to their dates of termination precludes them from showing that they were "qualified" for their previous positions, a necessary element of their *prima facie* case.  Plaintiffs Montano and Lucero, on the other hand, contend that these apparently contradictory statements are consistent.

Defendant also argues that it is entitled to summary judgment on the state law wrongful discharge claim because the RIF Policy did not give rise to an implied employment contract. Plaintiffs, by contrast, contend that the RIF Policy did give rise to an implied contract, and that their terminations were in violation of such contract.

5

For the reasons set forth below, the Court finds that Defendant's motions for summary judgment on both claims should be granted.

## I.       The Age Discrimination in Employment Act claims

### A.       Applicable Law

The ADEA makes it unlawful for an employer "[t]o discharge . . . any individual or otherwise discriminate against any individual . . . because of such individual's age [.]"  29 U.S.C. § 623(a).  As Plaintiffs Montano and Lucero acknowledge, the appropriate analysis is the three-step framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Although the *McDonnell Douglas* analysis originally applied to Title VII cases, it is now clear that the framework is also appropriate for claims of discrimination under the ADEA.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141-42 (2000).

Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  After the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for its employment action.  *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  If the employer makes such a showing, the plaintiff may then seek to demonstrate that the employer's proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id*. at 256.  A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  *Reeves*, 530 U.S. at 148.

With respect to an ADEA claim alleging wrongful termination in the context of an RIF, a plaintiff may establish a *prima facie* case by showing that (1) she was within a protected age group; (2) she was doing satisfactory work; (3) she was discharged despite the adequacy of her work; and (4) there is some evidence the employer intended to discriminate against her in reaching its RIF decision.[4]  *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006).

### B.    Judicial Estoppel

The doctrine of judicial estoppel is intended to protect the integrity of the judicial process by preventing a party who prevails on one ground in one judicial proceeding from repudiating that ground in a subsequent judicial proceeding.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).[5]  Further, the Supreme Court has articulated a specific standard to be used when considering the application of judicial estoppel to a set of facts similar to the ones in the instant case.  In particular, in *Cleveland v. Policy Management Systems Corporation*, the Supreme Court considered whether an applicants' claims of being disabled on SSDI applications automatically estopped their claims under the Americans with Disabilities Act ("ADA").  526 U.S. 795 (1999).  In analyzing this issue, the Supreme Court set forth the method that courts should use in deciding

---

[4]  In a RIF lawsuit, a modified *McDonnell Douglas* test is applied to the fourth prong of the *prima facie* case because in such a case, the plaintiff cannot actually point to a continuing vacancy because her position has been eliminated. *See Ellison v. Sandia Nat'l Labs.*, 60 Fed. Appx. 203, 205 (10th Cir. 2003).  A RIF plaintiff "can, however, point to circumstances that show that the employer could have retained her, but chose instead to retain a younger employee."  *Id.*

[5]  Importantly, although the Tenth Circuit had previously resisted application of the doctrine of federal judicial estoppel, it applied the doctrine consistent with the Supreme Court's directive in *New Hampshire* following the issuance of that decision.  *See Johnson v. Lindon City Corporation* 405 F.3d 1065, 1068-69 (10th Cir. 2005).

whether a party, in the face of her own contrary assertions made in a prior proceeding, can make a preliminary showing sufficient to survive summary judgment:  First, the court must determine whether the positions taken by plaintiff in the prior proceeding and the current one genuinely conflict.  *See Cleveland*, 526 U.S. at 802-03.  Second, assuming such a conflict exists, the plaintiff must offer an explanation that harmonizes the apparently contradictory statements.  *Id.* at 806-07.  With regard to this required explanation, the Supreme Court stated, a plaintiff "could not simply ignore the apparent contradiction," or "create a genuine issue of material fact . . . simply by contradicting . . . her own previous sworn statement."  *Id.* at 806.

Although the Supreme Court has not specifically addressed whether the *Cleveland* analysis applies to ADEA claims (as opposed to ADA claims), at least two federal circuits have considered and applied *Cleveland* in the context of such a claim.  Indeed, both the Third and Seventh Circuit Courts of Appeals have employed the *Cleveland* analysis to determine whether an ADEA plaintiff who applied and received SSDI benefits is judicially estopped from establishing a *prima facie* case.  *See Detz v. Greiner Indus. Inc.*, 346 F.3d 109 (3rd Cir. 2003); *Johnson v. Exxon Mobil Corp.*, 426 F.3d 887 (7th Cir. 2005).  The Fifth Circuit Court of Appeals has also found plaintiffs estopped under the Texas Commission on Human Rights Acts age provisions, which are patterned after and interpreted virtually the same as the ADEA.  *See McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 462 (5th Cir. 2005).

### 1.    *Detz v. Greiner Industries Incorporated*

In *Detz*, a fifty-nine year old plaintiff was terminated from his position and subsequently filed an SSDI application asserting that he was "disabled" and "unable to work."  *Detz*, 346 F.3d at 119-120. In his application, the plaintiff represented to the SSA that he became unable to work because of a disabling condition on the date of his termination, and that he was still disabled at

the time of his application.  *Id*. at 112.  After filing his SSDI application, the plaintiff filed suit

against his former employer alleging that the employer had violated, *inter alia*, the ADEA when

it terminated him. The district court granted the defendant's summary judgment motion under

*Cleveland*, finding that the plaintiff had not adequately reconciled his conflicting statement to

the SSA with his ADEA claim.

On appeal, the Third Circuit affirmed the district court's decision, finding that the

plaintiff was judicially estopped from establishing a *prima facie* case of age discrimination under

the ADEA.  *Id*. at 121.  The Third Circuit explained that, under *Cleveland*, it needed to consider

whether the plaintiff's statements to the SSA conflicted with his assertion that he was qualified

for the position under the ADEA.  *Id*.  The court noted that the plaintiff "indicated repeatedly on

various forms submitted to the SSA that he was unable to work-- and specifically that he was

unable to perform his previous job --due to his disability."  *Id*. at 120.  At no point did he

represent to the SSA that he was still qualified to perform light duty work.  However, in his

ADEA suit, the plaintiff sought to advance the position that he was discharged from a position

that he was physically capable of performing.  The Third Circuit concluded that the two

positions - that he was physically unable to work for SSDI purposes but was capable of

performing his previous job for ADEA purposes - were "patently inconsistent" and proceeded to

the second part of *Cleveland*.  *Id*.

Under the second part of this analysis, the plaintiff attempted to harmonize his SSDI

application with his ADEA claim by arguing that "he became disabled (for Social Security

purposes) by virtue of his termination -- that is, because, given his physical condition, he would

be unable to find another job."  *Detz*, 346 F.3d at 120.  The Third Circuit rejected plaintiff's

explanation stating that it "is no more than a further contradiction of his initial assertion [to the

SSA] and it does nothing to reconcile his previous two assertions -- one that he was able to work, and the other that he could perform the job which he was terminated." *Id.* Accordingly, the Third Circuit concluded that the plaintiff's explanation failed to meet the standard articulated in *Cleveland*, and therefore held he was judicially estopped from establishing that he was qualified for the position under ADEA.

### 2. *Johnson v. ExxonMobil Corporation*

Similarly, in *Johnson*, a fifty-four year old plaintiff filed a suit against his former employer after being terminated. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 888-889 (7th Cir. 2005). In his complaint, the plaintiff alleged that he was discriminated against in violation of the ADEA. *Id.* The plaintiff also filed an SSDI application stating that he became unable to work due to his disability on the same date that he was terminated. *Id.* at 889. The plaintiff attempted to reconcile the apparent inconsistency by stating that he would produce evidence at trial that would establish that he was, in fact, able to work on the date that he was terminated, that his conditioned worsened immediately after he was terminated, that he did not personally complete the SSDI application, and that he did not file the application until one year after his termination. *Id.* at 890-91. Applying the two-step *Cleveland* analysis, the district court determined that the plaintiff was judicially estopped from establishing a *prima facie* case under the ADEA. *Id.*

The Seventh Circuit Court of Appeals affirmed the district court's decision. It noted that to establish a *prima facie* case, a plaintiff must show that he is performing to the employer's legitimate expectations. *Johnson*, 426 F.3d at 892. The court continued that this standard is harder to meet than that of the ADA, which requires the employer to provide "reasonable accommodation." *Id.* at 893-94. Thus, the court held, "[P]laintiff's statement on his SSDI

application that he was unable to work facially contradicted any claim that he was performing to

his employer's legitimate expectations." *Id*. at 894.  It therefore concluded that the plaintiff was

judicially estopped from establishing his *prima facie* case under the ADEA.

## II.    Application to the instant case

Under *Cleveland*, the first question is whether the positions taken by Plaintiffs Montano

and Lucero in their SSDI Applications genuinely conflict with their ADEA claims.  In this

regard, to be "disabled" for SSDI purposes, an applicant must be incapable of performing his

"past relevant work," and he must be found "unable to perform any other job existing in

significant numbers in the nation's economy." *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§

404.1520(e)-(f), 404.1560(b)-© (2002).  On the other hand, in order to establish a *prima facie*

case under the ADEA, a plaintiff must show, among other things, that he was "qualified" for the

position he held prior to his termination. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101,

1108 (3d Cir. 1997) (en banc).  "By this we mean that [a] plaintiff ha[s] not suffered physical

disability or loss of a necessary professional license or some other occurrence that rendered him

unfit for the position for which he was hired." *Bienkowski v. American Airlines*, 851 F.2d 1503,

1506 n.3 (5th Cir. 1988); *Ligon v. Triangle Pac. Corp.*, 935 F. Supp. 936, 941 (M.D. Tenn.

1996).  Given these requirements, it is clear that a person who makes assertions in support of

both claims would often appear to be making facially incompatible assertions.  *See Jones v.*

*Southcentral Empl. Corp.*, 488 F. Supp. 2d 475, 485-86 (M.D. Pa. 2007); *EEOC v. Winslow*

*Mem. Hosp., Inc.*, 2006 U.S. Dist. LEXIS 39164, *25-26 (D. Ariz. 2006); *Stevens v. Bank One*

*NA*, 2006 U.S. Dist. LEXIS 73630, *16 (W.D. La. 2006).

This is certainly true in the current case.  Like the plaintiff in *Detz*, Montano and Lucero

were both employees over the age of forty who were terminated by their former employer and

subsequently applied for and received SSDI benefits.  *See Detz*, 346 F.3d at 110.  Further, like

the plaintiff in *Detz*, Montano and Lucero both filed an application with the SSA in which they

represented that they were entitled to SSDI benefits because they were disabled and unable to

work even before they were terminated from their position.[6]  Moreover, both Montano and

Lucero filed Function Reports with the SSA in which they indicated that they could not perform

many of the essential functions of life allowing the SSA to conclude that each Plaintiff was, in

fact, disabled.  On the other hand, in the instant suit, Plaintiffs have asserted to the Court that

they are qualified to perform their prior positions under the ADEA.  Based on the foregoing, the

Court finds that there is an obvious inconsistency between Montano and Lucero's statements to

the SSA that they were unable to work given their disability, and their positions in the current

litigation that they are qualified for and capable of their prior employment.  *Detz*, 346 F.3d at

118-119.

Plaintiffs Montano and Lucero cannot "simply ignore the apparent contradiction."

*Cleveland*, 526 U.S. at 806.  Rather under the second part of the *Cleveland* analysis, they must

explain how the two claims are not genuinely inconsistent.  This "explanation must be sufficient

to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith

belief in, the earlier statement, the plaintiff could nonetheless [perform the functions of his job

according to the reasonable expectations of his employer]."  *Id.*  Finally, Montano and Lucero

must offer this explanation, while keeping in mind the fact it is more difficult for an ADEA

plaintiff to reconcile an apparent inconsistency than it is for an ADA plaintiff.  "This is due to

_____

[6]  As set forth above, Montano represented to the SSA that he became disabled three days
before he was terminated and Lucero represented that she became disabled approximately two
months before she was terminated.

the fact that unlike the ADA, the ADEA definition of qualified does not provide any consideration of a potential 'reasonable accommodation' and instead simply requires that the individual must be qualified to perform the job according to his employer's legitimate expectations." *McClaren*, 316 F. Supp. at 502, *aff'd* 420 F.3d 457 (5th Cir. 2005).

### A.    The Social Security documents are properly before the Court

Rather than focusing on reconciling these apparently contradictory positions, however, Plaintiffs devote most of their effort to challenging the Social Security documents attached to Defendant's supplemental briefs.  Plaintiffs raise two main evidentiary arguments, in particular. First, Plaintiffs take issue with the fact that the SSDI Applications submitted by Defendant are not signed.  *See* Def.'s Supp. Montano S.J. Mem., Ex. A, ("Montano's SSDI Application); Def.'s Supp. Lucero S.J. Mem., Ex. A, ("Lucero's SSDI Application").  Based on this missing signature, Plaintiffs argue that the SSDI Applications are not reliable.  Specifically, Plaintiffs argue that neither Montano or Lucero "recall receiving, reviewing , authorizing, preparing, or signing" what they refer to as the "Draft Application."  Further, Plaintiffs contend that the dates of disability in each of the SSDI Applications are incorrect.

This reliability argument is not persuasive for two reasons.  First, Plaintiffs' counsel stipulated to the authenticity of the Social Security documents appended to Defendant's supplemental briefs.  *See* Def.'s Supp. Montano S.J. Mem., Ex. B ("Jarret Ltr."); *See* Def.'s Supp. Lucero S.J. Mem., Ex. B ("Jarret Ltr.").  It is also important to note that these documents were produced to Defendant by the SSA in response to discovery requests propounded in the course of this litigation.  *See id*.

Second, although the SSDI Applications submitted by Defendant are not signed, the law requires that a person who is awarded Social Security benefits must sign an application in which

he or she represents that everything contained therein is true to the best of his knowledge.  Aww 20 CFR 404.610.  Importantly, Plaintiffs do not argue that they were not awarded such benefits.  In fact, the final Social Security Notice issued to Montano notifying him that he met the medical requirements for disability benefits states, "You state you have been disabled since, [sic] November 13, 2004."  *See* Def.'s Supp. Montano S.J. Mem., Ex. D ("Montano's Social Security Notice").  This is obviously consistent with the statement in Montano's SSDI Application that he "became unable to work because of [his] disabling condition on November 13, 2004)."  Although Defendant does not attach a similar Social Security Notice for Lucero, it does attach a letter from the SSA to Lucero notifying her that she had been awarded Social Security benefits.  *See* Def.'s Supp. Lucero S.J. Mem., Ex. C, ("Lucero's Social Security Ltr.").  Further, in her own affidavit, Lucero stated that she informed the SSA that her disability began during her employment with Defendant.  *See* Pl. Lucero's Resp. to Def.'s S.J. Mot., Ex. A, ¶ 7 ("Lucero Aff.").  Nor is Plaintiffs' assertion that they could not recall the details of their SSDI Applications persuasive.  *See Johnson*, 426 F.3d at 891; *Lincoln v. Momentum Sys.*, 86 F. Supp 2d 421, 428-29 (D.N.J. 2000).

Plaintiffs' second main evidentiary argument is that the SSDI Applications (and, although it is somewhat unclear, possibly the other Social Security documents) are inadmissable hearsay.[7]  This argument is also unpersuasive.  Plaintiffs Montano and Lucero do not deny that they prepared and submitted these Applications.  Thus, these statements are an admissions by

---

[7]  Plaintiff Lucero also argues that the SSDI Application should be excluded under Federal Rule of Evidence 403.  The Court disagrees.  The information regarding Lucero's date of disability is highly probative and any biographical errors (omission of a prior name, incorrect date of marriage, and incorrect date of husband's death) do not create a substantial risk of prejudice.

party-opponents pursuant to Federal Rule of Evidence 801(d)(2) and are therefore not hearsay. *See Aldrich v. Boeing Co.*, 146 F.3d 1265, 1268-69 (10th Cir. 1998); *see also Shaps v. Provident Life & Accident Ins. Co.*, 244 F.3d 876, 885-86 (11th Cir. 2001) (plaintiff's assertion of good health in life insurance application not hearsay).

### B.   Plaintiff Montano has not reconciled his contradictory positions

Other than the evidentiary arguments set forth above, Plaintiff Montano only advances two positions, which could be considered efforts to reconcile his statement to the SSA that he was "disabled" with his position in this litigation that he is "qualified" for his prior position. First, Montano states, "Despite his health issues, [he] was able to successfully complete all required tasks as the Painting Department supervisor and would have continued to be able to do so if he was not terminated." *See* Montano's Resp. to Def.'s Supp. Brief in Support of S.J. Mot., dated August 13, 2007 (Doc. No. 100). Second, Montano states that "he wants to work even if doing so disqualifies him for [SSA] benefits." *Id*. The first argument is merely a repetition of the position that he has taken in the instant litigation and does nothing to harmonize his current stance with his statement to the SSA that he was "disabled" for SSDI purposes. *Detz*, 346 F.3d at 119; *Lincoln*, 86 F.Supp 2d at 428. The second argument also obviously fails to explain why Montano's statements are not contradictory.

Given Montano's failure to reconcile his statement to the SSA that he was "disabled" with his position in this case that he is "qualified" for his prior position, he is judicially estopped from establishing a *prima facie* case in support of his ADEA claim. Therefore, Defendant's motion for summary judgment regarding Montano's ADEA claim is granted.

**C.      Plaintiff Lucero has not reconciled her contradictory positions**

Plaintiff Lucero makes a more sophisticated, though ultimately equally unsuccessful, effort to reconcile her statement to the SSA that she was "disabled" with her stance in this litigation that she is "qualified" for her prior position.  Specifically, she quotes the following language from *Detz* that describes a hypothetical scenario in which it might be possible for a plaintiff's ADEA claim to coexist with her earlier application for Social Security benefits:  "[A] person who files for and is granted SSDI benefits several months after his discharge would not be precluded from advancing a successful ADEA claim against his employer where his disability did not prevent him from working at the time of his discharge, but where it subsequently worsened to a point where he is no longer able to perform that work."  *Detz*, 346 F.3d at 117.  Lucero then claims that she is in this precise situation and therefore is not judicially estopped from advancing her ADEA claim.

Plaintiff Lucero is half-right on this argument.  It is true that she did not file for and receive SSDI benefits until several months (slightly more than a year to be precise) after her discharge.  As importantly, however, Lucero is also half-wrong.  The scenario advanced by the Third Circuit in *Detz* envisions a plaintiff whose "disability did not prevent her from working at the time of her discharge, but where it subsequently worsened to a point where she is no longer able to perform that work."  *Detz*, 346 F.3d at 117.  By her own admission, this scenario does not describe Lucero because she represented to the SSA that, beginning two months prior to her discharge, her disability did prevent her from working.  Specifically, she represented to the SSA that she was "disabled" for SSDI purposes, meaning she was incapable of performing her "past relevant work," and was "unable to perform any other job existing in significant numbers in the nation's economy."  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(e)-(f), 404.1560(b)-©)

16

(2002).  Thus, the scenario set forth in *Detz* and advanced by Lucero is inapplicable to her situation.

In addition, Plaintiff Lucero argues that "she began to suffer from her condition around 1997 during her employment with [Defendant]," but "[s]he was able to negotiate her disability restrictions by frequently altering her position."  *See* Lucero's Resp. to Def.'s S.J. Mot.. However, this is simply a reiteration of her current position in this litigation and does nothing to bring it into harmony with her prior statement to the SSA.

Given Lucero's failure to reconcile her statement to the SSA that she was "disabled" with her position in this case that she is "qualified" for her prior position, she too is judicially estopped from establishing a *prima facie* case in support of her ADEA claims.  Therefore, Defendant's motion for summary judgment regarding Lucero's ADEA claims is granted.

## II.    The Wrongful Discharge Claim

In Count IV of the Amended Complaint, Plaintiffs Montano and Lucero assert that Defendant breached their employment contract.  This is a state law claim that the Court must resolve by looking to New Mexico state law. *See Gagnon v. Res. Tech., Inc.*, 19 Fed. Appx. 745 (10th Cir. 2001).  Defendant contends that Montano and Lucero were at-will employees whom it was free to terminate at any time for any reason or for no reason at all.  Plaintiffs' breach of contract claim rests on her theory that Defendant entered into an implied contract with Plaintiffs regarding the manner in which the RIF would be implemented.

In New Mexico, an employment relationship is presumed to be terminable at the will of either party. *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993).  However, the presumption is rebuttable by an implied contract term that restricts the employer's power to

17

discharge.  *Hartbarger*, 857 P.2d at 779; *Kiedrowski v. Citizens Bank*, 893 P.2d 468, 471 (N.M.

Ct. App. 1995).  Specifically:

> An at-will employment relationship can be terminated by either party
> at any time for any reason or no reason, without liability . . . New
> Mexico courts have recognized two additional exceptions to the
> general rule of at-will employment: wrongful discharge in violation
> of public policy (retaliatory discharge), and an implied contract term
> that restricts the employer's power to discharge.

*Hartbarger*, 857 P.2d at 779.  Plaintiffs do not contend that their terminations were retaliatory

discharges. The sole issue, then, is whether an implied contract exists.

Language in an employee handbook can modify the at-will employment relationship if it

sets up established procedures for termination, *Garcia v. Middle Rio Grande Conservancy Dist.*,

1918 P.2d 7, 11 (N.M. 1996), or is otherwise sufficiently explicit to create an expectation of

continued employment or to restrict the employer's power to discharge.  *Hartbarger*, 857 P.2d at

779-80.  However, a handbook does not create an implied contract if its language is non-

promissory in nature and lacks specific contractual terms which might evidence intent to form

such a contract.  *Sanchez v. The New Mexican*, 738 P.2d 1321, 1324 (1987).  Finally, and

importantly, an explicit disclaimer in an employee handbook stating that employees can be

discharged at any time and for any reason will ordinarily be upheld, unless the employer

engaged in some form of conduct or made oral representations which reasonably would lead

employees to believe that they would not be terminated without just cause or a fair procedure.

*Kiedrowski*, 893 P.2d at 471.

The only document Plaintiffs Montano and Lucero identify as giving rise to an implied contract is the RIF Policy.[8]  *See* Def.'s Montano S.J. Mot., Ex. L ("Montano's Resp. to Def.'s Interrogs.") Montano's Resp. to Def.'s S.J. Mot., Ex. A, ¶¶ 10-15 ("Montano Aff."); Def.'s Lucero S.J. Mot., Ex. L ("Lucero's Resp. to Def.'s Interrogs."); Lucero's Resp. to Def.'s S.J. Mot., Lucero Aff., ¶¶ 10-15.  The RIF Policy sets forth factors to be considered in determining reductions in force.  *See* Def.'s Montano S.J. Mot., Ex. M ("RIF Policy"); Def.'s Lucero S.J. Mot., Ex. M ("RIF Policy").  However, contrary to Plaintiffs' counsel's representation to the Court, the criteria set forth in the RIF Policy are not mandatory.[9]  In particular, the RIF Policy states that the criteria are "not all-inclusive, but will serve as a guide."  *Id*.  The Policy continues, "Seniority does play a role in the decision to lay-off.  However, it must be looked at along with other issues.  Seniority alone does not assure any employee of continued employment."  *Id*.  The RIF Policy also includes the following disclaimer:  "The Employee Information Handbook clearly states that employment is neither contractual, expressed or implied.  Employment is not guaranteed.  Employment may be terminated with or without cause and with or without prior notice."  Thus, it is clear that the RIF Policy contains language that is "non-promissory in nature

---

[8]  The other two documents cited by Montano and Lucero in their respective interrogatory responses and affidavits are documents submitted by Defendant to the Equal Employment Opportunity Commission explaining its RIF Policy.  *See* Def.'s Montano S.J. Mot., Exs. N, O; Def.'s Lucero S.J. Mot., Exs. N, O.  These documents were not provided to Defendant's employees and therefore cannot be considered policies of Defendant on which Plaintiffs relied.

[9]  In his brief, Mr. Saucedo states, "The [RIF Policy] uses mandatory terms such as 'must,' requiring all supervisors to follow the guidelines therein."  Lucero's Resp. to Def.'s S.J. Mot., p. 22.  This representation is not accurate.  The RIF Policy only uses the word "must" once, and it appears in the following sentence:  "Supervisors *must* constantly evaluate their employee's attitude and work practice."  RIF Policy (emphasis added).  To suggest that this sentence converts the RIF's "not all-inclusive" factors, which are intended to "serve as a guide," into mandatory criteria is simply not credible and thus creates no issue of material fact.

and lacks specific contractual terms which might evidence intent to form such a contract."
*Sanchez*, 738 P.2d at 1324.

Moreover, Plaintiffs Montano and Lucero both previously signed an "Acknowledgment of Receipt and Understanding" which stated, "Nothing contained in the Information Handbook for Employees of Christmas by Krebs is intended to create (*nor shall be construed as creating*) a contract of employment (*express or implied*) or guarantee employment for a definite or indefinite term."  *See* Def.'s Montano S.J. Mot., Ex. P ("Montano's Acknowledgment"); Def.'s Lucero S.J. Mot., Ex. P ("Lucero's Acknowledgment").  (emphasis in original).

It is true that the Court must look to "all of the circumstances of th[e] employment relationship" in determining whether a contract will be implied, *Hartbarger*, 857 P.2d at 675, and that the question of whether an at-will employment relationship has been modified is a "question of fact to be discerned from the totality of the parties' statements and actions regarding the employment relationship."  *Lukoski v. Sandia Indian Mgmt. Co.*, 748 P.2d 507, 510 (1988) (internal quotation marks omitted).  However, the burden is nevertheless on the plaintiff to "sho[w] that the employer has demonstrated an intent to restrict its power to discharge." *Hartbarger*, 857 P.2d at 782-83; *see also*, *Lopez v. Kline*, 953 P.2d 304, 307 (N.M. Ct. App. 1997) (plaintiff must present evidence of a promise sufficient to support an implied contract). Plaintiffs have not met this burden.  Therefore, Defendant's motion for summary judgment regarding Plaintiffs' wrongful discharge claims is granted.

## <u>Conclusion</u>

Based on the foregoing, Defendant's motion for summary judgment against Plaintiff

Montano (Doc. No. 47) and Defendant's motion for summary judgment against Plaintiff Lucero

(Doc. No. 49) will be GRANTED.


DATED August 29, 2007.


_____
UNITED STATES DISTRICT JUDGE
BRUCE D. BLACK

**Attorneys:**

**For Plaintiffs**
Christopher T. Saucedo

**For Defendant**
Danny Jarrett
James L. Cook